2013-1072 Since I'm a drinker of instant coffee, I don't know whether this is pronounced Keurig or Koy-rig. Keurig, your Honor. Keurig. Keurig. All right. Keurig v. Sturm Foods, 2013-1072.     Keurig v. Sturm Foods, 2013-1072. Mr. Albert. Thank you, Your Honor, and may it please the Court. The error of law in the district court was its failure to follow quanta. Quanta established a two-part substantial embodiment test for determining whether there's exhaustion of a method claim in precisely the situation that we have here, and that is where the item sold has to be combined with another item in order to practice the patented method. Now, if the district court had followed quanta— Well, why does that matter? Keurig sold the apparatus and got its compensation concerning what the patent covered, and Sturm was selling a cartridge to be used with those pieces of apparatus. Yes, Your Honor. And what the Supreme Court did in quanta— So why wasn't Keurig's patent exhausted? Yes, Your Honor. Let me address that exact question. The issue that the Supreme Court resolved in quanta was one that this Court had previously held differently, that there cannot be patent exhaustion for a method claim. And the Supreme Court held that there could be, but only in a particularly defined and delimited situation, and that is if this two-part substantial embodiment test applies. So the Supreme Court held that to have patent exhaustion where the item sold has to be combined with another item. So the item sold at issue here is the brewer. To practice Claim 29, which is the claim at issue in the 488 patent, it has to be combined with a cartridge. Well, the district court and Judge Saylor in the companion case both said that in reality those quanta—the quanta analysis was dealing with unfinished products. In other words, products that might have a better argument than something that is completely finished with respect to the exhaustion argument. So how do you address that distinction? Yes, Your Honor. It has to be a valid one. That is the argument that both of those judges came to in order to sidestep the two-part substantial embodiment test that would otherwise prevent there from being a finding of exhaustion. And the answer to Your Honor's question is that there is no completed product exception in quanta. So what quanta observed was that as in univis, which had in that particular instance been an incomplete product—it was some eyeglass blanks that had to be ground—the argument that the quanta had made was that the product in that case, like in univis, were incomplete products. What the court actually held though, the Supreme Court, the test that it established didn't turn on whether the product was complete or incomplete. The question that it was called upon to answer and that it did answer was, is there exhaustion of a method claim if the product sold, in this case the brewer, has to be combined with another product, in this case the cartridge, to practice the patented method? And the answer to that question was the two-part substantial embodiment test, which holds that number one, you have to show no reasonable non-infringing uses, and then we don't even get to part two. The court didn't say only did it. The court essentially said when, which doesn't preclude other fact situations. Well, Your Honor, I would direct the court to page 634 of quanta, in which the Supreme Court said, quote, the Intel products were specifically designed to function only when memory or buses are attached. And then we would also point out that... That's not the test. That's Intel's product. That's correct, Your Honor. And then the test is described on 631, in which the Supreme Court said, we agree with quanta that univis governs this case. As the court there explained, exhaustion was triggered by the sale of the lens blanks because their only reasonable and intended use was to practice the patent and because they embodied the essential features. And, again, they go down to cite univis, and univis makes this even clearer. Univis uses the terms first and second, so there are two separate prongs, each of which has to be met under both univis and quanta, and that first prong simply isn't met here. So the district court found that there was a completed product exception to quanta, but that simply isn't to be found in the quanta decision itself. It's not so much the district court said there was a completed product exception, but the district court said, you're taking a fact scenario in which the court discussed the application of the law to that fact scenario, and you're trying to say that it somehow sets down a broad and total rule for every other fact scenario. Well, she's not calling it an exception. She's saying this is what is different. This is why it's factually different, and this is why what's set in quanta can't be controlling in this set of facts. Well, I believe the district court did say that quanta didn't need to be followed here to find the exact language. Well, it said quanta doesn't apply to this fact. Yes, that quanta doesn't apply. That's correct, Your Honor. And I think that in quanta itself, we have the Supreme Court announcing in the first paragraph what it is that it's addressing, and it's saying, in this case, we decide whether patent exhaustion applies to the sale of components of a patented system that must be combined with additional components in order to practice the patented methods. So the carve-out from the doctrine that had previously been believed to be the case, namely that there is no exhaustion of method patents, was a narrow one. The Supreme Court wasn't using a blunt instrument here. It was carving out a specific exception, and just as in Univis, it had a two-part, a two-prong analysis required. I'm not aware of any case since Univis or quanta that argues that this isn't the test, that it isn't this two-part test. The argument that the district court came to, the position that it took, was that, well, the test doesn't apply if the product is completed. Interestingly, that's not the argument that Sturm made in its brief. They fall back on a different theory, which is that the quanta test, the two-part substantial embodiment test, doesn't apply if the product is unpatented. But again, that's not correct either, as we see from quanta itself, where the products at issue were patented. The Supreme Court pointed out, as in quanta, that the products at issue were covered by patents. That's at 635. So the argument- The inventive aspect of your machine is not embodied in the machine. In Claim 1, it is, but in Claim 29, it's not, and that's the key distinction here, is that Sturm is trying to argue that once Claim 1 is exhausted, as they allege that it is, that all the other claims in the patent are exhausted, and that's leading the court down an erroneous path. It would be illogical and contrary to any policy- Did Keurig sell a product within the scope of Claim 29 with the piercing limitation? We would argue, no, Your Honor. What Keurig sells is the brewer. The argument that Sturm makes is that the brewer embodies Claim 1, and therefore exhausts Claim 1. Then they say that automatically, every other claim in that same patent, although not in other patents, must be exhausted as well, and that's simply not the test that the Supreme Court held. I don't have any problem with the notion that we have to look at a claim-by-claim basis, but the method claims that you were talking about, so maybe their argument is too broad and we should consider this more narrowly, but the method claims you were talking about, all the inventive aspects that are called for in that method claim are encompassed within the apparatus, are they not? Well, we would say no, Your Honor. Two responses to that. First of all, on Your Honor's question, no, there was actually a dispute between the experts as to that. There was no finding on this issue by the district courts, because it never even applied the two-prong test. There was a dispute between the experts on that very issue, so for that reason alone, summary judgment couldn't be granted, and that's the second prong of quanta. We would also argue, as we did in the brief, that the first prong of quanta also needs to be met, and as to Claim 29, if we're looking at it on a claim-by-claim basis, as we believe, and we believe we agree with Your Honor that it's necessary, clearly that prong is not met. You're saying there's Claim 1 and Claim 29, and the product is being sold within the scope of Claim 1, and therefore Claim 1 is exhausted, but Claim 29 within the same patent is not? Yes, Your Honor. Sturm is arguing that once one claim in a patent is exhausted, the entire patent must be exhausted, and our argument is that it has to be analyzed on a claim-by-claim basis. Has there ever been such a case by an appellate court? Well, I'm not aware of any case to the contrary. Every issue in patent law, other than an exceptional situation like inequitable conduct, is analyzed on a claim-by-claim basis. But this is exhaustion. You've exhausted your patent right with respect to, of course, a patent covers a variety of claims. Precisely, Your Honor. And when we're talking about infringement, one can infringe Claim 1, but not infringe Claim 29. Exactly, Your Honor. But here, exhaustion is a different story. You've gotten paid. You've been compensated for that patent by selling the product that is within the scope of Claim 1, and you've said there isn't such a case that splits up a patent for patent exhaustion purposes. Well, there are certainly cases that indicate that every claim stands as its own invention. But that's not the same thing. Correct, Your Honor. And the argument that Sturm is making leads to, really, an odd split, because they concede that if a claim is in a different patent, then it wouldn't be exhausted by the exhaustion of one claim. But they argue that if it's in the same patent, then it would be. But every patent contains a variety of claims. Yes, Your Honor. Of different scope. Yes. So if the item instrument that's being considered is not within the scope of another claim within the same patent, there's no exhaustion? That's extraordinary. Well, that's the question that the Supreme Court addressed in Quanta, and that's how it came out. The test of whether that exhaustion occurs or not is the two-part substantial embodiment test. That's precisely what they were called upon to answer and did answer. And here, it's undisputed that those prongs are not met, or at least it's undisputed that the first prong is not met. And there is a dispute as to the second prong, so the court could not have granted summary judgment on that issue. And in particular, I'd like to point out that Sturm acknowledges that if the claim that they say is exhausted because another claim is exhausted were in a different patent, exhaustion wouldn't apply. In other words, what they're asking this court to do— No, Your Honor, except that under— That may not be right. It may not, although under Quanta, those are the facts that we have. So in Quanta itself, as the Supreme Court pointed out at 635 of its decision, the chipsets and microprocessors actually were patented. They were covered by other patents. So under the clear holding and facts of Quanta, if it's in another patent, it would—so they're asking this court to effectively draw that line and suggest that they have But whether or not they want us to draw that line, that wouldn't necessarily be the line we'd have to draw. But it's also true that despite what we said in Solman, where we said once you sell an apparatus, anyone has the right to use or resell that apparatus, you're saying that if I buy a coffee maker from you, I can't actually use it to make coffee unless I use it with your particular piercing mechanism. No, Your Honor, that's not your exposition. So it was undisputed in the factual record below that there are millions of cartridges, commercially available cartridges, that are reusable, that are refillable, so they have a hole in the top, and therefore they don't practice Claim 29. Claim 29 stands alone as a separate invention, which is not practiced, and millions of users use it that way. For example, it's a refillable cartridge. You put your own type of coffee in or you put whatever other— But these cartridges existed before, the stern cartridges existed before your patent issue, correct? They did, Your Honor, yes. And the question that the Supreme Court addressed is, if in the situation that Your Honor is concerned about, we would absolutely acknowledge that if the only question were use of the brewer in and of itself, there could very well be exhaustion as a result of exhaustion of a different claim. The question presented here goes beyond that. It says, what if you have to combine that product with a different product? And that's where Quanta comes in and says, well, in that scenario, you have this two-part substantial environment test that you have to meet. And here, undisputedly, it was not met. Mr. Albrecht, I don't want you to exhaust your time, so we'll save your rebuttal time and give you three minutes. Thank you, Your Honor. We'll hear from Mr. Onsen. May it please the Court. First of all, we never did concede that if a claim was in a different patent, it wouldn't necessarily be exhausted. We never drew the line there. For instance, you can have a continuation patent. A later patent application can have an earlier priority if it's the same invention. And really, what we're talking about here is what's the same invention. But isn't it true that in virtually every area of the law, we define the invention by the claim? I mean, you're trying to say that if there's any claim in any patent that's exhausted, we should therefore find every claim in that patent. The patent in its entirety is exhausted. I've never seen anything that would support that proposition. And I submit that, first of all, I don't believe there's anything to the contrary. If you look at all of the exhaustion decisions, whether by this court or the Supreme Court, you never see a claim-by-claim analysis. The issue of exhaustion hinges on a patentee's authorized, unrestricted sale of a patented product. And that's what counts. And the patented product is a product that embodies an invention. And in some parts of patent law, the invention is dealt with in terms of the patent as a whole. Marking law, assignment, a co-inventor's rights to ownership of the patent, and equitable conduct. But there are, I understand, you know, when you're looking at the meets and bounds of the patentee's rights to exclude, then it makes sense to look at the claims. But when you're looking for exhaustion purposes, and this court stated, I believe it was in the En Bonne Court, in the cardiac casemaker's case, talked about in the unique context of patent exhaustion. If a patent owner sells their license as a product, it's not unreasonable to hold that the patent owner has received due compensation under the patent, whether a product or a method patent. And I mean, we've submitted this case, it's just a very simple case. Exhaustion. Now, would Sturm be inducing infringement by selling a cartridge that is already pierced? Yes, of claim one, of claim 22. 29? Of claim 29. Claim 29 requires a pierceable cartridge, and Sturm doesn't sell refillable cartridges. But is it your point that it would be irrelevant? Yes, it's irrelevant because the purchaser who has bought the Curry Brewer, the patented Curry Brewer, can use it however they want. That's exhaustion law. So you can't be inducing infringement unless, or contributing to infringement, unless there's an underlying direct infringement? That's correct, and that is the purchaser. That's the user of the Brewer. This court talked about this in the Tessera v. ITC case, 646, Fed 3rd, 1370, that talks about that absurd result of a post-sale restriction would cast a cloud of uncertainty over every sale and every product in the possession of a customer, and would be wholly inconsistent with the fundamental purpose of patent exhaustion to prohibit post-sale restrictions on the use of a patented article. Are you saying that considering exhaustion claim by claim would vitiate the exhaustion doctrine? It would eviscerate it, Your Honor. First of all, the user of a product wouldn't know until the patentee had decided what claims they were going to assert against it if there was exhaustion. Well, why did the Supreme Court then bother to go through the analysis that went through in Quanta if the sale of the component parts should have been enough? That's a good question, Your Honor. Most questions from the bank. And under Quanta, they were initially looking at the issue of, well, should exhaustion apply to method patents at all? And then they were dealing with, and the argument is, well, if you've got, looking at Univis, if you've got this product that's incomplete, the authorized sale was a double-patented product. The authorized sale was of a product that could be later used to make a patented product. And I submit the appropriate analysis of Quanta is, again, looking at what that authorized sale is of. Did that surrender, did that surrender the patentee's monopoly by selling an unpatented product? And that's what the court focused on in Quanta. But that just doesn't apply to this case. This is simple black-letter exhaustion. You would say this isn't a completed product exception for Quanta. This is, Quanta only had to address the issues it was addressing because it didn't have a completed product. Which were, it had unpatented products before. And, yes, this case, as Judge Robinson held again, when you had, he called a complete product, you know, one that fully embodies a patent. Now, Judge Saylor described it differently. He said a complete product is one the consumer can use out of the box. Those are sort of two different ways of looking at it. Fortunately, I mean, in either case, the claims are exhausted because, again, this is a brewer. Often it's even sold with some of these cartridges. And the user's just using it the way that Couric tells them to use it. And the brewer's got needles in it to poke holes in cartridges. That is the primary, that's the primary and intended use of the product. Is this a case of first impression on the claim-by-claim issue? If the court were to apply a claim-by-claim analysis, it would be a case of first impression. Or to say one doesn't. I don't know if you'd call it a case of first impression. I mean, in the... But the argument may not have been raised before and decided. It certainly is not reflected in the decisions. I mean, Univis, I believe there were eight patents there. Quana, there were three patents there. And in none of those cases does the exhaustion analysis even mention specific claims of the patents. Again, the focus is, I mean, what makes exhaustion cases tough typically is, is this an authorized unrestricted sale? That's where you're saying, okay, was the patentee fairly paid for their invention so that they can be said to have surrendered their patent? Presumably there was no contractual restriction on affecting the sale of the apparatus. None whatsoever. This isn't a Mallinckrodt case. Right. It's nothing like that. It's even really nothing. In that way, it's different from Quanta in terms of the license and what's licensed and so what's authorized. What restrictions are there? I'm trying to determine whether or not your position is just over-inclusive, though. I mean, I understand your argument why that might apply in this case because the method is simply describing how to make coffee with a coffee maker. But isn't it conceivable that you could still have, out of the same written description, both an apparatus and a method where the two weren't as tied together as we have in this case? If there were separate inventions, there should be a divisional, and they should be defined as separate inventions. And then you'd have that kind of clarity in terms of whether selling the apparatus was in fact being compensated for the invention. In that case, the patentee would have an argument. No, I have two inventions here. And so I wasn't compensated for that one. But here you've got all one specification, all one patent, all one invention. And it really is 160 years of exhaustion law that if I buy it, I can use it. And I can use it however I want because I paid for it. And looking at the claim-by-claim analysis, that would create the same kind of mischief that Quanah talked about in saying exhaustion has to apply to method claims. A patentee could draft claims in a way, let's say sort of mirror image or mutually inclusive claims in the context of this case. Claim 30, where the cartridge is white. Claim 31, where the cartridge is not white. And then depending on what claim they decided to assert, you could always have some kind of a non-infringing use there. And the purchaser never knows it. You're hinging the exhaustion analysis on what claims the patentee decides to assert. And that's a post-sale restriction. More than that, what claim the patentee chooses to assert, but what claims are also in the patent. Correct. And again, you can run into situations, again, with continuations. What you're doing is you're setting up an incentive to game the patent system to deal with exhaustion issues. And that's just wrong. Exhaustion talks about did a patentee get fairly paid for their product? And can the person who paid for that product, what are their rights? Can they use it? And it's really, again, it's our position that this is just an extremely simple case of if you apply the bedrock law of exhaustion to the facts of this case. Going to the inventive aspects of the brewer. Again, both of the patents identify cartridges as the prior art. What the 938 even says, it's known to poke holes in a beverage cartridge to make beverages. That's prior art. In the record is the prior art curry B-100 coffee maker, where it's a drawer that slides out. And again, in terms of how the cartridge, I mean, it works the same way. The brewer works differently. But it does the same thing in terms of the cartridge. It pokes holes in it, runs hot water through it, and makes a beverage. You look at these claims here, Claim 6 or Claim 22, from which 29 depends, and what they're talking about is the brewer linkage mechanism. That's the inventive aspect of these patents. It's all in the brewers. So for those reasons, Your Honor, we ask that the judgment below be affirmed. Thank you. Is there any other questions? Mr. Ronson. Mr. Albert has three minutes. Thank you, Your Honor. Four minutes. Mr. Arnston said that no cases had a case-by-case analysis. We actually cited one in our brief, and that's the Syrix versus Intel case. What was interesting there is there was a stipulation that claimed one of the patent was exhausted, but the court went on and actually analyzed and, in fact, had a bench trial as to Claims 2 and 6, and this court affirmed. So there is a history of that. Quanta would have been pointless if the analysis that Sturm is presenting here today were the prevailing analysis. It was not a blunt instrument that said once one claim is exhausted, all the other claims in the same patent are exhausted, and, indeed, it's asking this court to set up an artificial test. Mr. Arnston talked about gamesmanship, but that's exactly what their approach here would create because patent lawyers would now be incentivized under the theory that they're asking this court to adopt to make sure that method claims are in a different patent from the product claim that's allegedly exhausted. If it all came down to whether Claim 1 is exhausted, therefore all the other claims are as well because Quanta makes clear that if they're in a different patent, then that's not the case, and that's the position that Sturm is now taking. They argue that the products, the microprocessors and chipsets in Quanta were, they say, unpatented, but the Supreme Court makes clear that they were patented. They were simply covered by other patents. So we suggest that that's an untenable distinction. And, finally, on the question of whether Claim 29 is inventive, I mean, if that's the test, that's an issue that was simply never resolved. That's a fact question that would have to go back to the court. It couldn't be resolved as a matter of summary judgment. And the only reason that the court held that it could was by sidestepping the two-part substantial embodiment test that Quanta sets forth. If the court has no other questions, that's all I have. Thank you, Mr. Albert. This has been a stimulating argument. We'll take the case under advisement.